UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK BROWER,

            Plaintiff,

  v.

TARGET CORPORATION,

            Defendants.

Case No. 3:24-cv-05524-TLF

ORDER GRANTING DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Target Corporation's ("defendant" or "Target") Motion for Summary Judgment. Dkt. 24.

The parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 12.

Considering each party's briefs, the oral argument, and the record, the Court GRANTS defendant's motion for summary judgment. Plaintiff Mark Brower ("plaintiff") has not presented evidence creating a genuine dispute of material fact, and he has not met his burden under Washington law to establish negligence.

## I.    Factual Background

This case was removed from the Pierce County Superior Court based on diversity of citizenship. Dkt. 1. The dispute arises from a slip and fall incident that occurred on November 4, 2022 at a Target store located in Puyallup, Washington. Dkt. 1-3, Complaint; Dkt. 34, Declaration of Mark Brower ("Brower Decl.") ¶ 2. Plaintiff entered the Target store intending to walk toward the pharmacy area to pick up a

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 1

1  prescription. Dkt. 25, Declaration of Sarah Tuthill-Kveton ("Tuthill-Kveton Decl."),

2  Deposition of Mark Brower, Ex. A at 30:5-6. He described the area as containing

3  "shopping cards, the checkout stands, the security personnel, the checkers, a food

4  court, and a Starbucks." Brower Decl. ¶ 3. As he walked past the area where shopping

5  carts are stored, he "slipped on some liquid substance on the floor that appeared to be

6  red or pink in color and like water" and later stated, "it looked like Hawaiian punch"

7  Brower Decl. ¶ 4; Dkt. 25, Tuthill-Kveton Decl., Ex. A at 31:8-12. Plaintiff asserts he did

8  not see the substance before he slipped and that the fall caused injuries to his knee and

9  head. Brower Decl. ¶ 6; Dkt. 25, Tuthill-Kveton Decl., Ex. A at 30:11-14 ("At the same

10 time as my knee hit the floor, my head was jostled, so I had, like, a concussion or

11 whiplash, as – as you call it.").

12     After the fall, plaintiff was assisted by Target employees until he left the store.

13 Dkt. 32-5, Declaration of John S. Feldmann in Support of Plaintiff's Motion for Sanctions

14 for Spoliation of Evidence, at 5. Plaintiff later completed a written customer statement

15 dated October 29, 2023. *Id*. at 8. Plaintiff also submitted photographs and a video

16 recorded after the accident, which show a mop containing reddish fluid and that wet-

17 floor signs were placed after the fall. Dkt. 34, Brower Decl. ¶ 4; Dkt. 25, Tuthill-Kveton

18 Decl., Ex. B, Fall Video. The video also shows packaged beverages, including Capri

19 Sun, stored nearby. Dkt. 25, Tuthill-Kveton Decl., Ex. B, Fall Video.

20     It is undisputed that plaintiff does not know how the liquid came to be on the floor

21 or how long it had been there prior to his fall. Brower Decl. ¶ 7; Dkt. 24 at 3-4. Although

22 plaintiff has, on prior occasions, "seen customers grab drinks and then head into the

23 store," this time he did not observe any customer spill a drink and saw no one carrying a

24

25 ORDER GRANTING DEFENDANT TARGET
   CORPORATION'S MOTION FOR SUMMARY
   JUDGMENT - 2

beverage right before he slipped. *Id*. ¶¶ 5,7. Nothing in the record shows whether the spill originated from a drink sold by Starbucks or the food court, from a drink carried by a customer, from a beverage sold in the store, or from any other source. No evidence suggests that any Target employee saw the spill or was aware of its existence before the accident.

## II.    Summary Judgment Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The Court then views the facts in the light most favorable to the nonmoving party and resolves any ambiguity in that party's favor. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. *Erie R.R. Co. V. Tompkins*, 304 U.S. 64, 58 (1938).

### III.     Discussion

A plaintiff asserting negligence must establish: (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; (3) plaintiff sustained an injury; and (4) a proximate cause between the breach and the injury. *See Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28 (1994)). Under Washington law, businesses such as Target owe a duty of reasonable care to business invitees. Washington Pattern Jury Instruction 120; *see also Miniken v. Carr*, 71 Wn.2d 325 (1967). In a typical premises liability case, plaintiff must prove that "the defendant had actual or constructive notice of the alleged unsafe condition." *Galassi v. Lowe's Home Centers, LLC*, 4 Wn.3d 425, 428 (2025) (citing *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 612 (2021)). Without evidence of actual or constructive notice, a plaintiff usually cannot establish breach of duty.

Plaintiff does not argue that Target had actual or constructive notice. Instead, he relies exclusively on Washington's narrow "mode-of-operation" exception recognized in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 49 (1983).

### A. Whether Defendant Had Actual or Constructive Notice Before Plaintiff's Fall

There is no evidence on the record that Target had actual knowledge of the spill before plaintiff's fall. Nothing in the record suggests that Target engaged in any undue delay in providing discovery. The original discovery deadline was June 6, 2025. Dkt. 13. The Court extended the deadline to May 8, 2026, pursuant to a stipulated motion submitted by the parties on July 10, 2025. Dkt. 23. Plaintiff has produced no evidence related to how the liquid came to be on the floor, how long it had been there, or any

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 4

Target policies or procedures that would link store operations to the creation of spills in the shopping-cart area.[1]

The only direct evidence plaintiff offers for the motion for summary judgment is plaintiff's own declaration. Dkt. 34. Plaintiff acknowledges he does not know how long the liquid was present or whether it originated from Starbucks, the food court, a customer drink, or packaged beverages nearby. Dkt. 33 at 8. He does not dispute the lack of actual or constructive notice.

**B. The *Pimentel* Mode-of-Operation Exception.**

Because plaintiff cannot show actual or constructive notice, he seeks to invoke the mode-of-operation exception. The doctrine eliminates the notice requirement only when the operating methods of a business "are such that dangerous conditions are continuous or easily foreseeable…." *Tavai v. Walmart Stores, Inc.,* 176 Wn. App. 122, 128 (2013) (quoting *Pimentel*, 100 Wash. 2d at 49)). This exception has been construed narrowly by the Washington Supreme Court. *Johnson v. Liquor & Cannabis Bd*., 197 Wn.2d 605, 619 (2021) ("Determining whether an unreasonably dangerous condition existed is not automatic. This is especially true in slip and fall cases… it could be *reasonably foreseeable* that the floor *could* become unreasonably dangerous through being wet and slippery, but, at the same time, there might *not* be proof that the floor *was* unreasonably dangerous in *a* particular instance.").

---

[1]The Court notes plaintiff's Request for Production No. 18, in which plaintiff requested "policies, procedures, or guidelines for inspecting the premises relating to hazards or foreign substances on the floor," and, on December 18, 2024, defendant stated it would produce the documents subject to a stipulated protective order. Dkt. 32-5 at 14. The stipulated order was submitted by plaintiff's counsel via email June 23, 2025. Dkt. 32-9 at 2-9.

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 5

Plaintiff argues that Target's placement of Starbucks near the entrance, coupled with shopping carts containing cupholders and the presence of packaged beverages, makes spills foreseeable. Dkt. 33 at 8; Brower Decl. ¶¶ 5,7. He hypothesizes the spill in his case might have been "Hawaiian punch." Dkt. 25, Tuthill-Kveton Decl., Ex. A at 31:12. These assertions do not satisfy *Pimentel*.

Unlike the record in *Johnson*, which included a store policy for wet-floor signs on rainy days, testimony that customers regularly tracked in water, and acknowledgment that rainy-day conditions created recurring hazards, here plaintiff has produced no evidence that spills often occur in the shopping-cart area, that Target employees expected spills to occur in that location, or that Target's method of operation created continuous or inherent risks of liquid accumulating on the floor in the area where plaintiff slipped. *Johnson*, 197 Wn.2d at 621-22

Washington courts have declined to apply the *Pimentel* exception where the hazard at issue is isolated, unexplained, or not meaningfully connected to a continuous or inherent feature of the defendant's operations. In *Carlyle*, the Washington Court of Appeals emphasized "the mere presence of a slick or slippery substance on a floor is a condition that may arise temporarily in any public place of business" and "something more is needed" to invoke the *Pimentel* exception. *Carlyle v. Safeway Stores, Inc*., 78 Wn. App. 272, 277 (1995). There, plaintiff slipped on shampoo in the coffee aisle, but the record contained no evidence that spills were recurrent in that particular area or that Safeway's mode of operation made such spills foreseeable. *Id*. at 278.

Similarly, in *Gaytan*, the plaintiff fell on sand or gravel in the parking lot, and the Court held that gravel tracked into a parking lot could not be tied to any specific

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 6

operational practice of the store and therefore could not support application of the exception, noting that whether *Pimentel* applies is "necessarily a fact-intensive inquiry." *Gaytan v. Lowe's Home Centers, LLC*, No. C24-0470-JCC, 2025 WL 1115412, at *3 (W.D. Wash. Apr. 15, 2025). In *Tavai*, the plaintiff slipped fifteen feet from a checkout area; the Court did not apply the exception, because plaintiff offered only generalized assertions about the slipperiness of Walmart's floors without producing evidence that Walmart's methods of operation created a continuous or inherent risk of spills in the area where the plaintiff fell. *Tavai v. Walmart Stores, Inc.,* 176 Wn. App. 122, 133-34 (2013).

Plaintiff's case does not present facts that would invoke the *Pimentel* exception. Even considering Target's reported incident history, showing three similar incidents in the past three years, does not establish the continuous or inherent risk required by *Pimentel*.[2]

Plaintiff has not produced evidence of repeated or predictable spills in the area where he fell. He has not shown that Target's placement of Starbucks or the food court results in continuous leaks or spills in the shopping-cart area. The mere fact that beverages are sold in a store, or that a food service is near an entrance, does not alone establish that spills are so continuous or foreseeable that Target should be held liable without proof of notice.

---

[2] Plaintiff's Request for Production No. 17 asks for other reported incident reports on the sales floor, and defendant's response states, in part, "in the 3 years prior to the subject incident, one incident was reported in 2020 involving liquid on the ground near the store entrance, in 2021 two incidents were reported, and in 2022 one additional incident was reported involving a liquid on the sales floor." Dkt. 32-5, at 13.

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 7

1 　　　As the Supreme Court explained in *Johnson*, something more than a wet floor
2 and a slip is required; wetness "is to be expected" in many places, and liability may not
3 rest on the fact of a temporary hazard alone. *Johnson*, 197 Wn.2d at 619 (citation
4 omitted).
5 　　　For these reasons, plaintiff has not shown the *Pimentel* mode-of-operation
6 exception applies, and his failure to establish actual or constructive notice is fatal to the
7 negligence claim.

### C.  Continuance under 56(d)

9 　　　In plaintiff's reply, plaintiff asserts the Court should order a continuance under
10 Federal Rule of Civil Procedure Rule 56(d). Dkt. 33 at 9. Plaintiff did not file a Rule 56(d)
11 motion, nor did he submit the affidavit or declaration the rule requires.
12 　　　The party seeking Rule 56(d) relief bears the burden of demonstrating, in affidavit
13 or declaration, (1) the specific facts it hopes to elicit from further discovery; (2) the facts
14 sought exist; and (3) the sought-after facts are essential to oppose summary judgment.
15 *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th
16 Cir. 2008) (citing *State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v.*
17 *Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)); *see also Tatum v. City & Cnty. of San*
18 *Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance
19 pursuant to Rule 56([d]) must identify by affidavit [or declaration] the specific facts that
20 further discovery would reveal and explain why those facts would preclude summary
21 judgment."). Failure to comply with these requirements is a proper basis for denying
22 relief. *Tatum,* 441 F.3d at 1101.

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 8

Plaintiff's request does not satisfy these requirements. Plaintiff states he has "not yet received critical discovery concerning Defendant's internal safety policies, procedures, and employee training materials. These materials are directly relevant to the issues of duty, breach, and foreseeability." Dkt. 33 at 9. This proclamation is conclusory and does not identify what specific facts the sought-after discovery would reveal or how those facts would create a genuine issue of material fact sufficient to defeat summary judgment. Discovery was open for around sixteen months. Plaintiff does not attempt to explain what steps he has taken to obtain discovery, and a lack of diligence in conducting discovery is itself grounds for denying a Rule 56(d) request. *Panatronic USA v. AT&T*, 287 F.3d 840, 846 (9th Cir. 2002). On this record, plaintiff has not established diligence or met any of the prerequisites for relief under Rule 56(d). The Court therefore declines to stay this motion pending further discovery or offer any other relief under the Rule.

## IV. Conclusion

Because plaintiff cannot meet the requirements of the traditional notice rule and has not established a factual basis for applying the *Pimentel* mode-of-operation exception, no genuine dispute of material fact exists, and plaintiff cannot meet his burden under the Washington negligence framework. Defendant's Motion for Summary Judgment is therefore GRANTED.

Dated this 15th day of December, 2025.

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 9

*Theresa L. Fricke*
United States Magistrate Judge

ORDER GRANTING DEFENDANT TARGET
CORPORATION'S MOTION FOR SUMMARY
JUDGMENT - 10